**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------- x
                            :

HAMILTON EXHIBITION, LLC,         :

           Plaintiff,          :     **COMPLAINT**

                            :

v.                          :     Case No. 19-cv-1470

                            :

IMAGINE EXHIBITIONS, INC. and TOM ZALLER,  :

                            :

           Defendants.       :
------------------------------------------- x

## COMPLAINT

        Plaintiff Hamilton Exhibition, LLC ("Hamilton Ex" or "Plaintiff"), by and through its undersigned counsel, Willkie Farr & Gallagher LLP, for its Complaint against Defendants Imagine Exhibitions, Inc. ("IEI") and Tom Zaller ("Zaller"), alleges as follows:

## NATURE OF THE ACTION

        1.    *Hamilton: An American Musical* ("*Hamilton*") tells the remarkable story of the life of Alexander Hamilton.  After inspiring millions of Americans with his stunning accomplishments, which form the bedrock of our nation, the creative team behind *Hamilton* developed a 360-degree immersive exhibition inspired by the revolutionary musical.  Featuring an audio tour narrated by the musical's author Lin-Manuel Miranda, *Hamilton: The Exhibition* (the "Exhibition") is designed to take visitors deeper into the life and times of Alexander Hamilton, while at the same time chronicling the American Revolution and the creation of the United States of America.

        2.    In October 2016, Hamilton Ex engaged IEI to serve as its production manager for the Exhibition.  IEI and Zaller, IEI's Chief Executive Officer, expressly represented

to Hamilton Ex that they had the experience, expertise, and capabilities to oversee all aspects of the development of the Exhibition.  Those representations were all false.  IEI and Zaller knew that IEI did not have the skill or wherewithal to fulfill its promises to Hamilton Ex, much less within the budget proposed by IEI and Zaller for this project.

3.      The result was a calamity of errors by IEI causing delays—including a substantial delay to the actual opening for the Exhibition—and millions of dollars in damages to Hamilton Ex.  From October 2016 through May 2018, IEI repeatedly missed deadlines, delivered shoddy work that was unusable, misrepresented its progress, failed to disclose information critical to decisions made by Hamilton Ex, and proposed ever increasing budgets at double or triple the cost without any basis whatsoever.  Hamilton Ex and the other members of the *Hamilton* creative team were required to relieve IEI of more and more of the responsibilities that IEI had initially been hired to perform.

4.      Had Hamilton Ex known that IEI actually lacked the experience, expertise, and capabilities as represented, Hamilton Ex would never have hired IEI in the first place.  And Hamilton Ex is not alone—Hamilton Ex has recently learned that another exhibition client of IEI's had a strikingly similar experience and likewise was forced to terminate IEI's services after witnessing IEI's utter incompetence.

5.      Accordingly, Hamilton Ex brings this action to recover from Defendants the substantial damages Plaintiff has suffered as a result of the fraudulent representations made by Defendants to induce Plaintiff to retain Defendant IEI's services as described below.  This action also asserts claims, and seeks damages, for Defendants' negligent misrepresentations to Hamilton Ex, breach of contract and unjust enrichment.

## THE PARTIES

6.      Hamilton Ex is a limited liability company organized and existing under the laws of New York with a principal place of business at 1501 Broadway, 24th Floor, New York, New York.  Hamilton Ex was organized to commercially exploit certain rights to the stage musical, *Hamilton*, including the intellectual property related to the show.  Specifically, Hamilton Ex is in the process of creating, and intends to commercially exploit, a museum-style exhibition based on *Hamilton* and certain historical facts concerning the life of Alexander Hamilton.

7.      IEI is, upon information and belief, a limited liability company organized and existing under the laws of Georgia with a principal place of business in Atlanta, Georgia. IEI claims to be in the business of designing, producing, marketing, operating and touring exhibitions in museums and other non-traditional venues.

8.      Tom Zaller is, upon information and belief, the President and Chief Executive Officer of IEI and is a citizen of the State of Georgia.

## JURISDICTION AND VENUE

9.      This court has diversity jurisdiction over the state law claims asserted herein under 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000.

10.      This court has personal jurisdiction over the Defendants pursuant to, among other things, N.Y. CPLR § 302(a).  Defendants regularly conduct business in and have regular systematic contacts with the State of New York, including contacts relating to the dispute at issue.  Defendants are also subject to the jurisdiction of this court because they committed tortious acts within the State, specifically certain fraudulent and negligent misrepresentations, causing injury to persons or property within the state.  They also regularly do or solicit business,

or engage in a persistent course of conduct and derive substantial revenue from goods used or consumed in the State, or should reasonably expect to have consequences in the State and derive substantial revenue from interstate or international commerce.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b).  A substantial part of the events giving rise to the claims occurred in the Southern District of New York.

## FACTUAL BACKGROUND

12.     In 2016, following the highly acclaimed reception of the musical, the producers of *Hamilton* decided to create the Exhibition.

13.     The Exhibition, undertaken and owned by Hamilton Ex, follows the plot of *Hamilton* and the life of Alexander Hamilton.  The overall sequential structure of the Exhibition and the design of the individual rooms of the Exhibition, which follow the narrative of *Hamilton*, are created by David Korins Design ("DKD"), the set designer of the musical, in collaboration with Hamilton Ex and other members of the creative team from *Hamilton*.

14.     In mid-2016, Hamilton Ex brought in two exhibition companies to pitch for the role of production manager of the Exhibition, one of which was IEI (along with its President and CEO, Zaller).

15.     At that time, Defendants claimed to be experts in the production of physical exhibitions who had "25 years of diverse experience in the museum and entertainment industries" and who could "take broad concepts and translate them into concrete realities."

16.     Defendants also expressly represented that they had the experience, expertise, capabilities, contacts and appropriate staffing to do the following:

- Prepare an accurate and detailed narrative for the Exhibition;

- Create a set of usable and approved build drawings to be approved by Hamilton Ex;

- Oversee the fabrication of the Exhibition within a proposed budget acceptable to Hamilton Ex;

- Source authentic historic artifacts and other objects referenced in *Hamilton* to be included in the Exhibition;

- Identify and secure a key museum venue in Chicago for the Exhibition;

- Source, negotiate with, contract and manage third-party vendors;

- Oversee and manage the marketing budget for the Exhibition;

- Oversee and manage the day-to-day operations of the Exhibition, including its installation.

17.    These representations were materially false when given by Defendants and were known to be so by Defendants when made to Plaintiff.

18.    In reliance on Defendants' misrepresentations, Hamilton Ex retained and paid Defendant IEI to serve as the production manager and to provide expert services in connection with the Exhibition.

19.    Time after time, Defendants' representations about their capabilities proved to be false, even as Defendants proved to be incapable of handling the responsibilities they were given in connection with the production of the Exhibition.  A few examples are described below.

## Defendants IEI's Inability and Failure to Provide Accurate and Usable Written Content

20.    Defendants represented that IEI was able to draft the Exhibition's written content on a timely basis, including drafting an accurate Exhibition narrative script.

21.    The written work produced by Defendant IEI was chronically late, factually inaccurate, and grossly inappropriate.

22.    Hamilton Ex retained the services of a Yale history professor to consult on the subject of historical accuracy.  In reviewing IEI's written work, the professor found the

research incomplete and the imagery inaccurate, appearing to rely on first-page google results. The Yale history professor concluded that IEI did not have a qualified team that could provide proper written content.

23.     Another expert on Hamilton's life also reviewed IEI's written work and stated the following: "After reading just nine pages, I am already dismayed by how many errors there are, some of them quite glaring."  He then listed the egregious mistakes that appeared in just the beginning of IEI's written work, noting that it would take him "many, many hours to check the script against my book."  He concluded that the "script is going to need a lot of work."

24.     Hamilton Ex never received a usable narrative script from Defendants, and instead proceeded to construct the Exhibition based on detailed renderings and design drawings prepared by DKD.  These renderings and design drawings were created before any narrative script was even delivered by IEI, rather than the other way around, which would have been more sensible and efficient.

25.     As a result of Defendants' misrepresentations as to IEI's capabilities and IEI's inability to deliver accurate content on a timely basis, Hamilton Ex has suffered and continues to suffer significant economic damage.

## Defendants' Inability to Source Artifacts or Even Provide an Itemized Artifacts List

26.     In order to induce Plaintiff to retain IEI's services, Defendants also represented that IEI had the experience and capabilities to identify, source and authenticate historical artifacts and other objects in connection with the Exhibition.

27.     Defendants' representations were knowingly false when made to Hamilton Ex.

28.     IEI represented that it would provide an artifacts list by March 16, 2018 and April 30, 2018.

29.     IEI did not meet either deadline.

30.     Over the next several months, Hamilton Ex and DKD repeatedly followed up with IEI regarding these items.

31.     For example, on or about April 9, 2018, DKD wrote: "Hi John, following up on this content timeline and artifact stuff.  It's going to become vitally important as we revise the design following our budget review. Particularly the feedback from the architect."

32.     IEI did not respond.

33.     After many subsequent requests by Hamilton Ex which IEI simply ignored, IEI finally sent an artifact and content matrix, along with an update on the narrative script.

34.     As it turned out, IEI's matrix was historically inaccurate and grossly incomplete and was unusable.

35.     In addition, Plaintiff learned that at least one custodian of an identified artifact would not trust Defendants with it.  This was never disclosed to Plaintiff.

36.     As a result of Defendants' misrepresentations as to IEI's capabilities and IEI's inability to deliver artifact lists and actual artifacts on a timely basis, Hamilton Ex has suffered and continues to suffer significant economic damage.  In addition, Hamilton Ex has been required to engage a replacement production company, two project managers, a script writer, a creative director, a new lighting designer (even though Hamilton Ex had already paid a fee to the lighting designer recommended by IEI and who IEI threatened with never giving work to again if he continued on the Exhibition), and has been required to spend additional funds on creative design assistants, on a historical consultant, all of which was needed to re-do or un-do IEI's substandard and/or unusable work.

**Defendants' Misstatements of IEI's Drafting Capabilities and Failures to Perform**

37.      As part of the services to be provided by IEI, Defendants represented they had a full staff of capable draftspersons for the design schematics of the Exhibition, and IEI agreed to manage and lead the drafting process for the Exhibition.

38.      Despite these representations, IEI did not have a full staff of draftspersons and was later forced to engage an outside engineering firm in Las Vegas, Nevada to help in the drafting process.

39.      The Las Vegas firm, in turn, was terminated for its subpar work product and unresponsiveness.

40.      As a result of IEI's persistent failure to manage the drafting process, as discussed above, DKD took on the role of managing the drafting process.

41.      Defendants also initially represented that it would not be necessary to hire an architect for the Exhibition because IEI was well-versed in design compliance.

42.      It subsequently became clear that these representations were also false, and that the retention of a licensed architect was necessary to provide real-time guidance on, among other things, issues of ADA compliance and emergency egress plans.

43.      The architect ultimately retained by Plaintiff had specific issues with ADA compliance in one of the rooms of the Exhibition, the solution to which resulted in significant budget increases.

44.      As a result of Defendants' misrepresentations as to IEI's capabilities and staffing concerning draftspersons, and IEI's inability to deliver accurate build drafts on a timely basis, Hamilton Ex has suffered and continues to suffer significant economic damage.

**Defendants' False Statements About Venue**

45.     One of Defendant's first, and most vitally important, tasks for the Exhibition was to identify and secure a venue in Chicago.

46.     Throughout the course of 2017, Defendant repeatedly represented to Hamilton Ex that Defendant had all but secured a deal with the Chicago Museum of Science and Industry.

47.     For example, on or about May 11, 2017, Zaller wrote to Hamilton Ex: "I met with MSI Chicago and this week and they remain very interested and want to get a terms sheet done and lock in the opening date." Over the subsequent months, Zaller repeatedly represented to Hamilton Ex that a deal with the Chicago Museum of Science and Industry to host the Exhibition was all but done.

48.     In November 2017, Plaintiff was informed that no deal whatsoever was close or in place, much less all but done. To the contrary, Hamilton Ex learned for the first time in November 2017 that Museum representatives were unsure whether the Exhibition would fit within its mission at all.

49.     Hamilton Ex was then forced to find an alternative venue (which it had to do itself even though IEI had previously represented that it had the capability to do so) on Northerly Island for the Exhibition in Chicago, at significant and unexpected expense.

50.     The alternative venue has made the cost of the Exhibition significantly more expensive. In selecting Northerly Island, Hamilton Ex relied on IEI's purported expertise to identify the costs and benefits of this site location. IEI, however, failed to identify several major costs that Hamilton Ex has been forced to now incur. IEI either knew about these additional major costs and hid them from Hamilton Ex due to the already increased budget—

which was significantly above what Hamilton Ex bargained for when it engaged IEI—or was

negligent in not identifying them to Hamilton Ex.

**Defendants' Ever-Changing and Baseless Budgets**

51.     At the outset of the project, Defendants represented that the Exhibition

could be produced on a budget of $6 million.  Defendants relied on this representation in

proceeding with IEI and the Exhibition.

52.     For many months, Hamilton Ex and DKD requested that IEI provide a

detailed and itemized breakdown of this budget.

53.     Time and again, IEI refused to provide this critical information, created

phony excuses for its failure to deliver, or simply did not respond.

54.     The reason for IEI's refusal to deliver the requested support for its total

budget became all too clear by early 2018.  IEI and Zaller had no basis at all to represent as they

did that the total cost for the Exhibition would be $6 million, and on information and belief knew

at the time they made this representation that it was false and totally unrealistic.

55.     For example, on or about March 7, 2018, DKD requested that IEI put them

in direct contact with the scene shops, writing "It's absolutely imperative that our team speaks to

the scene shops that are bidding on the scenery so that we can accurately talk them through the

drawing package and the big packages so that the numbers that get back are as close to what we

want as possible."  IEI refused to identify and allow DKD to contact any scene shops that were

bidding on the scenery.  Ultimately, DKD had to prepare the necessary drawing packages and

communicate with potential scene shops to prepare scenery on an expedited basis.

56.     In addition, once it had been decided the location of the Exhibition would

be Northerly Island—because IEI failed to deliver on its promises to secure the Chicago Museum

of Science and Industry—the budget was increased to $8 million based on IEI's and Zaller's

assurances that the Exhibition could be completed for this amount.  IEI and Zaller repeatedly

assured Hamilton Ex that its design for the Exhibition would fit within the $8 million budget and

Hamilton Ex relied on these representations in proceeding with the Exhibition.

        57.     As Hamilton Ex subsequently learned at great cost, IEI and Zaller's new

budget was totally unrealistic and IEI and Zaller knew that they had no basis for it.  Despite their

repeated assurances, IEI and Zaller had given no thought to the actual costs of production

(lighting, controls, tech equipment, tent structure, etc.) and had no budget in place that would

support their representations to Hamilton Ex.  Indeed, when pen was finally put to paper with

real numbers and costs in April 2018, IEI came back with a budget that was more than *double* its

previous budget.  Even that budget significantly understated Hamilton Ex's true cost of

completing the Exhibition.

        58.     As a result of Defendants' misrepresentations and failures to perform and

the resulting delays and added fabrication costs, the costs to complete the Exhibition has

increased substantially, and the overall cost of the Exhibition is far greater than what Defendants

represented to Hamilton Ex to induce Defendants to engage Defendants in the first place.

## COUNT ONE: FRAUD

        59.     Hamilton Ex repeats and restates the allegations in all of the preceding

paragraphs as though fully set forth herein.

        60.     The statements identified with particularity above were false when made

by Defendants and were known by Defendants to be false when provided to Plaintiff.

61.     Plaintiff detrimentally relied on the truth of those statements when it retained Defendant IEI to perform the services identified above and throughout the course of its engagement.

62.     As a direct and proximate result of its detrimental reliance on Defendants' false statements, Hamilton Ex has incurred and will continue to incur substantial damages in an amount to be determined at trial.

## COUNT TWO: NEGLIGENT MISREPRESENTATION

63.     Hamilton Ex repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

64.     Defendants held themselves out as having unique and special expertise with regard to the production of exhibitions.

65.     Defendants owed a duty of care to Hamilton Ex.  This duty included the reasonable degree of care, skill, and knowledge that is ordinarily employed by professional producers of exhibitions.  Defendants breached this duty.

66.     The representations identified above were false when made by Defendants.

67.     Defendants were negligent in making the representations identified above.

68.     As a direct and proximate result of Defendants' negligent misrepresentations, Hamilton Ex has incurred and will continue to incur substantial damages in an amount to be determined at trial.

## COUNT THREE: BREACH OF CONTRACT

69.     Hamilton Ex repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

70.     Defendant IEI agreed to perform certain services identified above.

71.     Plaintiff paid consideration for those services.

72.     Defendant IEI failed to perform those services and therefore breached its agreement with Plaintiff.

73.     As a direct and proximate result of Defendant IEI's breaches, Plaintiff has incurred and will continue to incur substantial damages in an amount to be determined at trial.

## COUNT FOUR: UNJUST ENRICHMENT (AGAINST IEI ONLY)

74.     Hamilton Ex repeats and restates the allegations in all of the preceding paragraphs as though fully set forth herein.

75.     Plaintiff paid Defendant IEI in excess of $250,000.  IEI failed to perform the work for which it was hired, and a portion of this amount was also collected supposedly to pay other expenses which IEI never paid yet kept the money for itself.

76.     There is no justification for IEI to retain any payments, and its doing so is unjust and inequitable.

77.     Defendant IEI therefore has been unjustly enriched to the extent it obtained any payments from Plaintiff.  All such amounts should be returned to Plaintiff, with interest.

## PRAYER FOR RELIEF

WHEREFORE, Hamilton Ex requests that the Court:

a.     Adjudge and decree that Defendants are liable for fraud, negligent misrepresentation, breach of contract, and unjust enrichment as alleged herein;

b.     Enter a judgment against Defendants that awards Hamilton Ex an amount of compensatory damages (plus interest) to be determined at trial; punitive damages for IEI's

willful, malicious, and outrageous behavior; and the costs and attorney's fees incurred by

Plaintiff in connection with this proceeding; and

      c.     Grant such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Hamilton Ex hereby demands a trial by jury on all issues raised in the

Complaint herein.

Dated: New York, New York
       February 15, 2019

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ Jeffrey B. Korn_____

Jeffrey B. Korn
Joseph Baio
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
jkorn@willkie.com

*Attorneys for Plaintiff Hamilton
Exhibition, LLC.*